IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 4:06CR3177 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| SILVIA OCHOA-GONZALEZ, | ) | |
| | ) | |
| Defendant. | ) | |

    Judge Piester suggests that I suppress the statements of the defendant to Agent Vera because they were given when she was in custody and without benefit of her *Miranda* rights. (Filing 84 at CM/ECF page 19.) He also recommends that I deny the motion to suppress the defendant's subsequent statements to Agent Morales. (Filing 84 at CM/ECF page 20.) (In its case in chief, I understand the government agrees that it must not use the defendant's statements to Agent Hoagland while she was in custody in Iowa. *See* filing 84 at CM/ECF page 21.)

    The government objected to the report and recommendation insofar as the defendant's statements to Vera. (Filings 86 and 87.) Likewise, the defendant objected to Judge Piester's decision as it pertains to the statements made to Morales. (Filings 89 and 90.) Observing that the parties do not question Judge Piester's recitation of the core facts, I have conducted a de novo review of his decision. With one exception, I adopt the thoughtful report and recommendation. I next explain the reasoning for my decision.

*Brief Background*

    Pursuant to an entry warrant, about 210 armed immigration agents in "raid" attire descended upon and entered the Swift packing plant in Grand Island, Nebraska to search for illegal aliens. After the agents arrived, the officials at the plant indicated

that they would cooperate in any way possible.  Because this was a packing house with lots of dangerous equipment, the agents asked Swift to shut down the production line.  The agents also asked Swift to have their employees assemble in the cafeteria.  Swift complied and issued a directive to the employees to go to the cafeteria.

Agents were stationed at the doors of the plant.  They were told to question any employee who left, but if the employee said he or she desired to leave the agents were told to let them go.

The defendant went to the cafeteria and was questioned by Agent Vera.  Vera wore black clothing, a bullet proof vest and had a gun holstered on his thigh.  The defendant presented her immigration papers to Vera and Vera began to ask some questions.  The defendant said she was a permanent resident alien.  A stamp on the passport that the defendant presented was obviously irregular and Vera's suspicions were aroused.  He asked the defendant where she got the stamp on her passport.  The defendant replied that she had gotten it from an immigration office, and Vera responded in an accusatory manner:

> Q. You asked her where she got the ADIT stamp and what does Ms. Gonzalez say?
> A. She told me she get it from an immigration office.
> Q. Once she says that, what do you say then?
> A. To tell me the truth . . . .

(Filing 76 at CM/ECF page 19.)

A further exchange took place, and the defendant then made inculpatory statements essentially admitting that she was here illegally having obtained the passport stamp from someone in this country.  At that point, Vera called another agent and told him that the defendant was in the country unlawfully and she should be processed with the other illegal aliens.  That agent took the defendant to Agent Morales.

Agent Morales then began processing the defendant. She was assigned to take biographical information from the aliens who had been detained. Morales asked the defendant for her name, and the defendant uttered an angry non-responsive inculpatory statement. Morales calmed the defendant, and the defendant then provided biographical information that was recorded on "a processing sheet." (*See* Government's Ex. 2.)

*Agent Vera*

I find and conclude that a reasonable person would have rightly believed that the defendant was free to leave up to the point Agent Vera told her to tell the truth. I further believe that the defendant's initial act of producing her immigration papers and responding to Agent Vera's threshold questioning was entirely voluntary. Those acts and statements are properly admissible against the defendant.

In this regard, I reject Judge Piester's finding and conclusion that the defendant was "in custody" when she was told to go to the cafeteria by her employer. (*See* filing 84 at CM/ECF page 18)  Respectfully, such a decision is at odds with the principles announced by the Supreme Court in *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 220-21 (1984) (actions of armed INS agents in conducting inquiries of employees by systematically moving through factory and asking all employees their citizenship while INS agents were stationed at each exit did not amount to a seizure of the individual workers who were questioned). Simply put, the defendant could have rejected her employer's directive, and gone home. Instead, hoping to keep her job while also avoiding detection by *La Migra*, she went to the cafeteria and began to give Agent Vera a bogus story.

That the production line was shut down and the employees were instructed by Swift management to assemble in the cafeteria, while in *Delgado* the employees continued to work while they were questioned, provides no reason to ignore the

Supreme Court's decision. This is particularly true given the obvious danger to the employees that would have arisen had the agents questioned the Swift workers while they continued to process meat using sharp instruments and other dangerous equipment. *Delgado* teaches that where employees are truly free to leave, and *government agents* never do or say anything to the contrary, no seizure of the employees takes place even though the agents enter the work place aggressively and in force.[1] Thus, it makes no difference whether, as here, the employees assembled in the cafeteria for questioning at the direction of their employer or whether, as in *Delgado*, they were questioned as they worked.

However, once Agent Vera became suspicious of the defendant and instructed her to tell the truth, the legal situation changed. I find and conclude that any reasonable person would have understood Vera's truth-telling directive to be the commencement of a custodial interrogation, particularly (a) when that Teutonic command is given by an obviously armed man wearing black "raid" clothing and a bulletproof vest and (b) when that statement is examined in the context of everything else that came before the statement. As such, the statements to Agent Vera that followed the directive to tell the truth were the involuntary product of an interrogation conducted in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

### *Agent Morales*

Following the arrest of the defendant, Agent Morales asked the basic booking question: What is your name? Instead of answering the question or refusing to do so, the defendant gave a non-responsive and volunteered statement. Judge Piester

---

[1] As an aside, I know that *Delgado* was a Fourth Amendment case and we are dealing with Fifth Amendment questions here. However, the "seizure" question under the Fourth Amendment discussed in *Delgado* and the "custody" and "interrogation" question for Fifth Amendment purposes presented here are similar. Thus, *Delgado* cannot be disregarded.

was surely correct in concluding that these admissions were not the product of an unlawful interrogation intended to obtain incriminating evidence. Moreover, there is no reason to think that these statements were involuntary. As a result, if the defendant goes to trial, she will be required to suffer the consequence of venting her spleen at Agent Morales.

As for the biographical information that the defendant ultimately provided Morales, that data is admissible because it was not solicited as a part of an interrogation intended to obtain incriminating information. In brief, routine biographical data is exempted from *Miranda's* coverage. *See*, *e.g.*, *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990); *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996).

IT IS ORDERED that:

1. The report and recommendation (filing 84) is adopted in part and rejected in part. The government's objection (filing 86) to the report and recommendation is sustained in part and denied in part. The defendant's objection (filing 89) to the report and recommendation is denied.

2. The defendant's motion to suppress (filing 46) is granted as to all statements that the defendant made to Agent Vera *after* he told her to tell the truth. Otherwise, the motion to suppress is denied.

January 18, 2008.                               BY THE COURT:

                                                *s/Richard G. Kopf*
                                                United States District Judge